IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JASON A. MORGAN, )
)
    Plaintiff, )
)
)
v. ) 1:10CV230
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security, )
)
    Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jason A. Morgan, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Act. The Court has before it the certified administrative record and the parties have filed cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on September 26, 2006, alleging a disability onset date of June 15, 2006. (Tr. 96-104.)[1] His application was denied initially and upon reconsideration. (Tr. 43-47; 49-55.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 56.) At the administrative hearing on April 28, 2009, Plaintiff appeared *pro se*. The

---

[1] Transcript citations refer to the administrative record of proceedings relating to this case. (Docket Entry 7.)

ALJ found Plaintiff not disabled under the Act (Tr. 10) and the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion Defendant's final decision. (Tr. 1.)

## II. FACTUAL BACKGROUND

At the time of his date last insured, June 30, 2010, Plaintiff was thirty-three years old. (Tr. 15.) He attended school through the ninth grade and later obtained a GED. (Tr. 24.) His past relevant work consisted primarily of construction work (Tr. 15) which is classified as medium exertional work. (*Id.*)

## III. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner held that Plaintiff was not under a disability within the meaning of the Social Security Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam); *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 497, 599 (4th Cir.1979)). The Court does not conduct a *de novo* review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at

2

1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.; Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by [an] ALJ is not binding if it was reached by means of an improper standard or misapplication of law.").

## IV. THE ALJ'S DECISION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the "inability to do any substantial activity by reason on any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(a). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).
[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

3

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). Under this process, the ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[4] and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 404.1520.

In this case, the ALJ reached the fifth step of the sequence, at which point he determined that Plaintiff was not disabled as of his date last insured. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since his alleged onset date of June 15, 2006.

---

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (e.g., pain). *See* 20 C.F.R. § 404.1545 (a)(1); *see also Hines*, 453 F.3d at 562 (noting that regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis [which] . . . means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall*, 658 F.2d at 265.

4

(Tr. 12.) The ALJ next found in step two that Plaintiff had severe impairments: residuals of valve replacement and residuals of heart defibrillator placement. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 13.)

## B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony, the findings of treating and examining health care providers, and the state agency disability determination, rendered by non-examining health care providers. (Tr. 13-15.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform a full range of sedentary work. (*Id.*)

In reaching a conclusion about Plaintiff's RFC, the ALJ considered Plaintiff's testimony and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 14.)

The ALJ considered the report of Dr. Rosenbloom, a consultative examiner, who diagnosed Plaintiff with congenital heart disease/atrial fibrillation. (*Id.*) The ALJ noted that "[e]ven though Dr. Rosenbloom determined that claimant's ability to lift/carry and to perform intense activity was affected by the claimant's medical condition, he did not opine that the claimant's ability to sit, stand, move about, handle objects or travel were impacted by the claimant's cardiac condition." (*Id.*)

The ALJ also considered the opinion evidence of state agency consultant Dr. Jeffrey Martin and treating physician Dr. Thomas Gehrig. As noted by the ALJ, Dr. Martin "opined that the claimant was able to perform light work and to sit/stand/walk six hours of an eight-hour workday with limitations in exposure to hazards, temperature extremes and vibrations." The ALJ "[gave]

5

ample weight to Dr. Martin's opinion but [found] that the claimant is further limited to sedentary work due to cardiac impairments." (Tr. 15.) The ALJ further noted that Dr. Gehrig "did not conclude that the claimant was totally/permanently disabled and/or unable to work" and in fact, "Dr. Gehrig frequently reported that the claimant was doing well from a cardiac standpoint." (*Id.*)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff was not capable of performing the functional demands of his past relevant work as a construction worker, as the medium exertional level job exceeds the sedentary work Plaintiff is now limited to performing. (*Id.*)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Plaintiff was twenty-eight years old on his alleged disability onset date which is defined as a "younger individual age 18-44," with a limited education and the ability to communicate in English. (Tr. 15.) The ALJ noted that transferability of job skills was not at issue pursuant to the table rules set forth in the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2. (*Id.*) The ALJ found that based on a residual functional capacity for the full range of sedentary work, Plaintiff was not disabled at the date of his last insured. (Tr. 16.)

6

## V. ANALYSIS

The only issue on appeal is whether the ALJ "erred in failing to evaluate and assign weight to medical source opinions of record in accordance with the regulatory requirements." (Pl. Br. in Supp. of Summ. J. at 2, Docket Entry 10.) Plaintiff contends that his RFC, as found by the ALJ, is not supported by substantial evidence because the ALJ did not afford appropriate weight to these medical source opinions. Plaintiff asserts that the ALJ should have addressed a conflict between the opinion of the consultative physician, Dr. Rosenbloom, and the RFC assessment made by the ALJ. Plaintiff further argues that the ALJ should have addressed a similar conflict between the opinions of the two state agency medical consultants, Drs. Martin and Linster.

### A. Dr. Alan A. Rosenbloom

Dr. Rosenbloom, a state agency consultative examiner, examined Plaintiff on November 6, 2006. (Tr. 233-37.) Dr. Rosenbloom noted:

> This patient presently presents with a history of congenital heart disease, however the structural abnormality that he was born with is quite unclear. The patient in the last three years since his last surgery has certainly deteriorated in terms of his overall physical capacity but it is not clear whether this is related to valvular dysfunction, myocardial dysfunction or arrhythmia. The patient's present condition does not appear to affect his ability to sit, stand, move about, handle objects, hear, speak or travel. Lifting and carrying as well as intensive physical activity are obviously affected by his cardiac status.

(*Id.* at 235.) Plaintiff contends that Dr. Rosenbloom's opinion finding that Plaintiff's ability to lift and carry was affected by his cardiac condition is inconsistent with the RFC determination in which the ALJ found that Plaintiff could lift or carry 10 pounds. (Pl. Br. at 7, Docket Entry 10.)

Contrary to Plaintiff's assertion, however, the ALJ considered Dr. Rosenbloom's opinion and relied upon it in determining Plaintiff's RFC. In fact, the ALJ noted that "Dr. Rosenbloom's findings clearly evidenced that [Plaintiff] was able to physically function," but the ALJ acknowledged that Plaintiff's cardiac issues limited him to sedentary work. (Tr. 15.) The ALJ, therefore, took into consideration Dr. Rosenbloom's findings. Further, the determination by the ALJ that Plaintiff

7

retained the ability to lift and carry 10 pounds is supported by substantial evidence in the record. Dr. Rosenbloom noted that Plaintiff's ability to lift and carry would be affected by his cardiac condition, but he did not place complete restrictions on such activities. There is other evidence in the record, moreover, showing that Plaintiff's condition had stabilized and improved with medication. (Tr. 218; 275; 277.) In a follow-up appointment after undergoing an atrial flutter ablation in February 2007, Plaintiff told his doctor that "his palpitations have significantly decreased since his [procedure]" and that he had no "shortness of breath, chest pain, syncope, presyncope, PND, orthopnea, or lower extremity edema." (Tr. 362-63.) Similar positive reports are noted in his medical records from September 2007, February 2008 and August 2008. (Tr. 358; 355; 353.) These records clearly support the ALJ's finding that Plaintiff's cardiac condition had "improved and stabilized with treatment. . . ." (Tr. 14.) It is clear from the ALJ's decision that he considered Dr. Rosenbloom's opinion and gave it appropriate weight. Accordingly, the ALJ's finding that Plaintiff could perform a full range of sedentary work is supported by substantial evidence of record.

### B. Dr. Jeffrey Martin and Dr. Dorothy Linster

Plaintiff further argues that the ALJ did not adequately explain the weight he afforded the state agency RFC assessments of Dr. Martin and Dr. Linster. (Pl. Br. at 7, Docket Entry 10.) Dr. Martin reviewed the administrative record on December 22, 2006, and found that Plaintiff retained the ability to lift 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours in an 8-hour day, sit for 6 hours in an 8-hour work day, and push and pull without limits. (Tr. 323-333.) Dr. Martin further found that Plaintiff should avoid concentrated exposure to extreme cold and heat, vibration, and hazards. (Tr. 330.) On February 26, 2007, Dr. Linster affirmed Dr. Martin's December 22, 2006, assessment. (Tr. 322.) Plaintiff argues that although the ALJ assigned "ample weight to Dr. Martin's assessment . . . . the ALJ failed to resolve a conflict between that assessment and the ALJ's RFC assessment." (Pl. Br. at 8, Docket Entry 10.) Plaintiff, in essence, contends that

the more restrictive limitations regarding exposure to extreme environmental conditions and other hazards, noted by Dr. Martin (and affirmed by Dr. Lister), would negatively impact Plaintiff's ability to perform other work existing in significant numbers in the national economy. This argument is unavailing.

Pursuant to Social Security Ruling 96-6p, the ALJ gave appropriate weight to the findings of the state agency consultants concerning Plaintiff's exertional limitations. The state agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(f)(2)(i). In general, a state agency medical consultant's opinion can only be given weight

> insofar as [it is] supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical consultant. . . .

S.S.R. 96-6p. Here, the ALJ summarized Dr. Martin's findings (which were later affirmed by Dr. Linster) and clearly assigned them "ample weight." Just because the ALJ afforded some weight to Dr. Martin's assessment does not mean he erred by not affording it more, or even controlling, weight. The majority of the evidence cited by the ALJ comes from the medical records of the Plaintiff's own treating physicians. Drs. Martin and Linster were the only physicians to assess environmental limitations of avoiding concentrated exposure to extreme temperatures, vibrations, and hazards. There is no other evidence in the record to support the additional environmental limitations assessed by these two state agency reviewing consultants.

In any event, as pointed out by Defendant, even if the ALJ had included environmental limitations to Plaintiff's RFC, it would not have any practical effect on Plaintiff's unskilled, sedentary occupational base contemplated by the Medical Vocational Guidelines applied by the ALJ. *See* S.S.R 96-9p. In fact, "[e]ven a need to avoid all exposure to [workplace hazards] would not, by itself,

9

result in a significant erosion of the [sedentary] occupational base. S.S.R 96-9p. "In general, few occupations in the unskilled, sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration or unusual hazards." *Id.* Any error, therefore, that the ALJ may have committed in failing to acknowledge these environmental limitations is harmless.

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence, and applied the correct legal standards in evaluating Plaintiff's RFC. Accordingly, Plaintiff's argument is without merit.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry 9) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be **GRANTED** and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
January 17, 2013